OPINION *Page 2 
{¶ 1} Defendant-appellant Nathaniel Smith appeals his conviction entered by the Delaware County Court of Common Pleas, on one count of forgery, in violation of R.C. 2913.31(A)(3), following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On August 11, 2006, the Delaware County Grand Jury indicted Appellant on the aforementioned charge. The trial court issued a Warrant on Indictment on the same day. Appellant was subsequently arrested and brought before the trial court for arraignment, at which time he entered a plea of not guilty. The trial court released Appellant on his own recognizance. The matter proceeded to trial on November 21, 2006.
 {¶ 3} Ashlee Stoneburner testified she is a team leader at the SkyBank branch on Polaris Parkway, in Delaware County, Ohio. On July 28, 2006, a man, who was subsequently identified as Appellant, presented a check, which was issued by Spangler Candy Company, to one of the bank tellers for cashing. Stoneburner was at the teller's workstation at the time, trying to fix a computer printer. Because the printer was broken, the teller was unable to process Appellant's transaction. Stoneburner asked Appellant for his identification and the check, and proceeded back to her desk. When Stoneburner viewed the check, she observed type printed asterisks before and after the amount payable as well as asterisks before and after Appellant's name. Stoneburner had recently received a memo from SkyBank security advising its bank employees to be cautious of checks containing asterisks. As such, the check Appellant presented immediately raised a red flag in Stoneburner's mind. Stoneburner took the check to the *Page 3 
manager's office and telephoned security. The bank security department instructed Stoneburner to contact the Westerville Police Department. The police arrived and arrested Appellant.
 {¶ 4} Jennifer Weaver, a fraud investigator for SkyBank, testified she was contacted by the security department and advised an individual had attempted to cash what appeared to be an altered check at the SkyBank branch on Polaris Parkway, Westerville, Ohio. Weaver was able to verify Spangler Candy Company actually issued the check, but the check had not been made payable to Appellant. Weaver explained her department had sent alerts to the bank branches to specifically look for typeprinted asterisks as such are commonly used to cover up the original payee information, which has been "whited out". The payee address also included "United States of America", which is not typically part of a payee address. Weaver provided the Westerville Police with surveillance photos taken of Appellant.
 {¶ 5} Officer Ryan Aspey, a police officer for the City of Westerville, testified he was on duty in uniform in a marked vehicle on July 28, 2006, sometime between 11:00 a.m. and 12:00 noon, when he was dispatched to the Polaris SkyBank to investigate a forgery incident. When the officer arrived, Appellant was standing at the counter of one of the teller's stations. Officer Greg Franey was also dispatched to the bank. Officer Aspey entered the bank through the north entrance, while Officer Franey entered through the south entrance. Officer Aspey asked Appellant to follow him to the manager's office. Officer Aspey subsequently placed Appellant under arrest and transported him to the Westerville Police Department for booking and processing. The *Page 4 
officers secured the check and the envelope in which Appellant had presented it, and placed the items into evidence.
 {¶ 6} Phillip Gentile with the United States Postal Inspection Service testified he received a telephone call from the Westerville Police on July 28, 2006, asking if he would be interested in speaking with Appellant. Gentile explained, in February or March, 2006, the postal inspection service began working on a case which involved checks being stolen out of the mail at various industrial parkways throughout Ohio. Throughout the course of the investigation, the postal inspectors had identified several unique characteristics of the altered checks. Often, the individual altering the checks would type asterisks between the wording and the pay to box of the check. The postal inspection service shared the information with local law enforcement and financial institutions throughout Ohio.
 {¶ 7} Gentile noted a black gang from North Carolina was responsible for the crimes. This gang traveled to Central and Northern Ohio, and stole mail out of industrial parkway mailboxes on Saturdays. The gang had easy access to the incoming or outgoing mail of the businesses. After finding the checks, members would alter each check to the name of a transient or homeless person they had picked up on the street. The gang would pay the transient or homeless person between $10.00 and $500.00 to cash the checks. Unfortunately, neither the police nor the postal inspection investigators were able to apprehend any of the gang members involved in Appellant's thwarted attempt. When Gentile spoke with Appellant, Appellant gave him a scenario consistent with the information obtained during the postal service's investigation. *Page 5 
 {¶ 8} At the close of the State's evidence, defense counsel made an oral Crim. R. 29 Motion for Acquittal, which the trial court denied. Thereafter, Appellant proceeded with his case.
 {¶ 9} Appellant testified on his own behalf. He stated he is twenty-seven years of age and has a GED. Appellant worked for Ward Trucking Industries, driving a fork lift as well as loading and unloading trucks. On July 28, 2006, Appellant finished his shift at 7:30 a.m. At approximately 9:00 a.m., Appellant proceeded to the National City Bank branch located at Broad and Central Ave. in Columbus, and withdrew $25.00. Appellant proceeded to a gas station across the street from the bank and purchased cigarettes. After purchasing the cigarettes, two men in a gray Chrysler 300M pulled into the parking lot. The men approached Appellant and asked him if he needed to make any money. The men told Appellant they needed to have a check cashed, but they did not have any identification. They told Appellant their boss would write the check out in his name if he agreed to cash it for them. Appellant joined the men in the vehicle, and the three drove to a nearby McDonald's. Appellant entered the restaurant, purchased breakfast, and returned to the vehicle. One of the men walked around to the back of the building. When all three were in the car, the group proceeded to SkyBank in Westerville. During the ride, Appellant fell asleep. Appellant did not know where he was. At the bank, Appellant presented the check and his identification card to the teller.
 {¶ 10} On cross-examination, Appellant acknowledged he had never worked for the Spangler Candy Company and had never earned legitimate money from the company. However, Appellant adamantly denied knowing the check was not good. Appellant stated he never looked at the actual check until he was in custody. Appellant *Page 6 
testified he first looked at the envelope after he had handed the check to the teller. Appellant conceded, it was at that point, he realized the check was bogus. Appellant acknowledged he spoke with his girlfriend on his cell phone while he was in the car on the way to the bank. When he explained he was going to be given $100.00 to cash a check for the strangers, his girlfriend stated, "I hope nothing bad happens". Appellant believed his girlfriend was expressing a general concern as the two people he was with did not seem to be bad. Appellant explained the men were able to get his attention initially because he needed money for rent. At the time, he was not concerned for his personal safety, but only with coming up with $500.00.
 {¶ 11} After hearing all the evidence and deliberations, the jury found Appellant guilty of forgery as charged in the Indictment. The trial court deferred sentencing, pending a presentence investigation. The matter came on for sentencing on December 29, 2006. The trial court sentenced Appellant to five years community control.
 {¶ 12} It is from this conviction and sentence Appellant appeals, raising the following assignments of error:
 {¶ 13} "I. APPELLANT'S CONVICTION WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE.
 {¶ 14} "II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I, II {¶ 15} In these assignments of error, Appellant challenges the sufficiency and manifest weight of the evidence. *Page 7 
 {¶ 16} In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."Id. at paragraph two of the syllabus.
 {¶ 17} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 18} Appellant was convicted of forgery, in violation of R.C.2913.31(A)(3), which provides: *Page 8 
 {¶ 19} "No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 20} "* * *
 {¶ 21} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 22} Appellant argues his conviction for forgery was based upon insufficient evidence because the State failed to establish he had the culpable mental state required to commit the offense. Appellant submits the State failed to present any direct evidence he had purpose to defraud or knew he was facilitating a fraud. Instead, the State relied upon evidence which, "at best could possibly be termed circumstantial evidence". Brief of Appellant at 6.
 {¶ 23} Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979), 60 Ohio St.2d 126,131. Culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid, 9th Dist. No. 01CA007947, 2002-Ohio-6116, citing Kreuzer v. Kreuzer (2001), 144 Ohio App.3d 610,613.
 {¶ 24} If the State relies upon circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." State v. Daniels (June 3, 1998), 9th Dist. No. 18761, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting Jenks, 61 Ohio St.3d at paragraph one of the syllabus. *Page 9 
Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the * * * fact-finding function is concerned, all that is required of the [fact finder] is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." State v. Chisolm (July 8, 1992), 9th Dist. No. 15442, quoting Jenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160, 168, citing Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329,331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott,51 Ohio St.3d at 168, citing Hurt, 164 Ohio St. at 331.
 {¶ 25} In the instant action, the testimony established Appellant was approached by two men whom he did not know. The men asked Appellant if he needed to make money, which Appellant did. The men told Appellant their boss would write a check in his name and he would be given $100.00 to cash the check. Appellant provided the men with his identification card. The party proceeded to McDonald's, where the passenger exited the vehicle, while Appellant purchased and ate breakfast. Appellant and the passenger returned to the vehicle and the three men proceeded to the SkyBank branch in Westerville. Appellant was unfamiliar with the area. Appellant's girlfriend spoke with Appellant on the cell phone on the trip to Westerville, and advised him she did not think he should be involved in the situation.
 {¶ 26} Without looking at the check and without knowing from whom these gentlemen received the check, Appellant went into a bank and attempted to cash it. We find Appellant knowingly facilitated a fraud because, regardless of his purpose, he was *Page 10 
aware his conduct would probably cause a certain result. An individual is equally culpable whether the individual had positive knowledge or deliberate ignorance. United States v. Jewell (9th
Circuit 1976), 532 F 2nd 697, 700. After viewing the evidence in a light most favorable to the State, we find any rational trier of fact would have found the essential elements of forgery proven beyond the reasonable doubt.
 {¶ 27} Appellant further argues his conviction was against the manifest weight of the evidence because the greater amount of credible evidence supported his position he did not act with the culpable mental state.
 {¶ 28} As discussed, supra, Appellant engaged in a situation in which all the surrounding circumstances should have made him aware he was probably facilitating a fraud. The jury was free to accept or reject any or all of the testimony of the witnesses. The jury found Appellant purposefully or knowingly committed the offense. We find the jury's verdict was not against the manifest weight of the evidence.
 {¶ 29} Appellant's first and second assignments of error are overruled.
 {¶ 30} The judgment of the Delaware County Court of Common Pleas is affirmed.
 By: Hoffman, P.J. Farmer, J. and Edwards, J. concur *Page 11 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Delaware County Court of Common Pleas is affirmed. Costs assessed to Appellant. *Page 1